

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00033-CV
_____


IN THE ESTATE OF CHARLES ORISE FUSELIER, DECEASED



On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 08C0650-CCL



Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss
Dissenting Opinion by Justice Moseley

OPINION

The purported joint will of Charles Orise Fuselier and his wife, Dena Fuselier, was dated March 21, 2007, and was in Dena's handwriting, except that it also bore three signatures: those of Dena, Charles, and Rebecca W. Miller, a notary public. The document names Kayla A. Fuselier—Dena's natural daughter adopted by Charles—as the sole devisee, and makes no mention of Nicole Fuselier and Cherise Fuselier, Charles' two daughters from a prior marriage. After Charles' death July 15, 2007, Dena applied to probate the March 21, 2007, document as Charles' will. Nicole contested Dena's application for probate.

The trial court granted Nicole a summary judgment. In doing so, it ruled that the will was invalid both because it was not properly witnessed under Section 59 of the Texas Probate Code and because it is an unfulfilled contingent will. On appeal, Dena contends that Nicole's summary judgment fails on both grounds.

We reverse the summary judgment and remand the case for further proceedings because (1) Dena may qualify as a witness to the will and (2) the will's language is ambiguous and requires extrinsic evidence to construe it.

*(1)*     *Dena May Qualify as a Witness to the Will*

Dena contends that Nicole failed to establish as a matter of law that the will was invalid under Section 59 of the Texas Probate Code due to the lack of attesting witnesses. Dena argues that

2

the will was properly witnessed because Dena's signature on the will can constitute both a co-testator's signature and a witness' signature. We agree.

When reviewing a summary judgment, the question on appeal is whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law. *French v. Gill*, 252 S.W.3d 748 (Tex. App.—Texarkana 2008, pet. denied) (citing *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990)). All conflicts in the evidence are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to any genuine issue of material fact are resolved in favor of the nonmovant. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546 (Tex. 1985).

If a will is not entirely in the testator's handwriting, it must be attested by two or more credible witnesses above the age of fourteen who sign the will in the presence of the testator. TEX. PROB. CODE ANN. §§ 59(a), 60 (Vernon 2003); *Jones v. Whiteley*, 533 S.W.2d 881, 883 (Tex. App.—Fort Worth 1976, writ ref'd n.r.e.). It is well established law that "credible witness" means "competent witness." *Triestman v. Kilgore*, 838 S.W.2d 547 (Tex. 1992) (citing *Lehmann v. Krahl*, 155 Tex. 270, 285 S.W.2d 179, 180 (1955)). A witness to a will serves to prove the will was executed with the formalities and solemnities and under the circumstances required to make the will valid. *See* TEX. PROB. CODE ANN. § 84(b) (Vernon Supp. 2008). Proving a will requires the sworn testimony or affidavit of one or more of the subscribing witnesses. TEX. PROB. CODE ANN.

3

§ 84(b)(1) (Vernon Supp. 2008); *In re Estate of Teal*, 135 S.W.3d 87, 90 (Tex. App.—Corpus Christi 2002, no pet.).

There is no Texas precedent prohibiting a co-testator from acting as a witness to another co-testator in the same joint will. Further, a person can be a witness to a will without intending to be a witness. *Teal*, 135 S.W.3d at 90.

In the case of *In re Estate of Teal*, the trial court held a notary was a subscribing witness to a will, despite her stated intentions to the contrary. In *Teal*, neither of the two signing witnesses could be found to prove a will, so the proponent argued that the notary, who signed and stamped the will, had acted as a subscribing witness. *Id.* The notary did not intend to be a witness to the will, but the court held that her actions were more consistent with the actions of a witness "because there is no requirement that a will be notarized, [the notary's] signature served no purpose other than as a witness." *Id.* at 90–91.

In this case, it is undisputed that the notary's signature qualifies as a witness' signature. The issue is whether Dena's signature qualifies as a witness' signature. It is undisputed that Dena's signature served the valid legal purpose of executing the will as a co-testator, that is, of executing her own will. Applying the rationale of *In re Estate of Teal*, however, if Dena qualifies as a competent witness under Section 59 of the Texas Probate Code, her signature may serve as a witness' signature, regardless of her intended purpose in signing the will. There is no evidence before us that at the time Dena signed the will, she was incompetent, under the age of fourteen, or outside the

4

presence of the testator. Therefore, the evidence before us is insufficient to prove as a matter of law that the will is invalid under Section 59 of the Texas Probate Code. This rationale for the summary judgment is invalid.

*(2)    The Will's Language Is Ambiguous and Requires Extrinsic Evidence to Construe It*

Dena also contends that Nicole failed to prove as a matter of law that the will was an unfulfilled contingent will.[1]  We agree, because the will is ambiguous.

The language of a will may clearly show the testator's intent—be it contingent, conditional, or otherwise—or it may express the testator's intent ambiguously. *Ferguson v. Ferguson*, 121 Tex. 119, 45 S.W.2d 1096, 1097 (1931).  The determination of whether a will is ambiguous is a question of law. *Harris v. Hines*, 137 S.W.3d 898, 903 (Tex. App.—Texarkana 2004, no pet.); *Hurley v. Moody Nat'l Bank of Galveston*, 98 S.W.3d 307, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

A contingent will is a will that will take effect only upon the happening of a specified contingency. *Bagnall v. Bagnall*, 148 Tex. 423, 225 S.W.2d 401, 402 (1949); *In re Estate of Perez*, 155 S.W.3d 599 (Tex. App.—San Antonio 2004, no pet.).  We must determine whether the happening of the contingency is a condition precedent to the operation of the will, or whether the arguably contingent language was only a statement of the motive or inducement that led to the preparation and execution of the instrument. *Perez*, 155 S.W.3d at 601; *Bagnall*, 225 S.W.2d at 402.

---

[1]Dena also argues that the court should apply the well-recognized rules of construction to interpret the will.  However, we may not apply the rules of construction to determine the testator's intent unless the language of the will is ambiguous. *See Ferguson*, 45 S.W.2d at 1097.

We may also examine the character of the bequests in determining whether the testator intended a contingent will. *Ferguson*, 45 S.W.2d at 1098. The operation of a contingent will is defeated by the nonoccurrence of the contingency. *Bagnall*, 225 S.W.2d at 402.

The body of the purported joint will of the Fuseliers is short:

In the event of our deaths, Dr. Charles O. Fuselier and Dena Fuselier; parents of Kayla A. Fuselier, leave all our real property; bank accounts; stocks and personal items to Kayla Ann Fuselier.

Dallis Parker and Perry Parker are Kayla's legal God parents and will manage our estate for [illegible] Kayla A. Fuselier until she is 18 years of age.

In the case of a single will, the phrase "if anything should happen to *us*" has been held to create a contingent will. *Burke v. Jackson*, 127 Tex. 623, 95 S.W.2d 1296, 1297 (1936) (emphasis added). The present case is distinguishable from *Burke*, because the present will purports to be a joint will while the testamentary instrument in *Burke* was only one person's will.

Here, the phrase "in the event of our deaths" is susceptible to different interpretations depending on whether the interpreting court emphasizes the singular "event" or the plural "deaths" and whether the language can be interpreted only jointly ("our deaths") or can be understood as speaking for each testator at the time his or her will is probated—Charles dies first and his will is understood to say "at the time of my death." The will could reasonably be interpreted to require the simultaneous deaths of both co-testators—the singular "event of our deaths." It could also reasonably be interpreted to require the eventual deaths of both co-testators—when "our deaths" have both occurred. Also, as a by-product of the document's brevity, we see nothing that would exclude

6

an interpretation allowing the will, as that of the first to die, to act at that time—being understood as "upon my death, my property described in this will shall go as set out herein." It has been suggested that the joint will contemplates only that it will be effective after both testators have died, based on the operative language of the will and the fact that no provision is made for a surviving spouse to either receive anything under the will or to manage anything during Kayla's minority. While the suggested reading might be reasonable, it is by no means the only reasonable reading of the spare language of this document.

For these reasons, we hold that the language of the will is ambiguous and the intent of Charles is unclear from the bare language in the document. Therefore, the summary judgment evidence is insufficient to prove as a matter of law that the will is an unfulfilled contingent will. Accordingly, we reverse the trial court's granting of summary judgment on the issue of the meaning of the document and remand the case for a will construction in light of extrinsic evidence as to Charles' intent.

We reverse the summary judgment and remand this case to the trial court for further proceedings in accordance with this opinion, to consider evidence as to Dena's qualifications as a witness and as to Charles' intent.

_____
Josh R. Morriss, III
Chief Justice

DISSENTING OPINION

I must disagree that a person can simultaneously serve both the role of a co-testator in a joint will and as a witness to that same will.

The majority relies on the rationale employed in *In re Estate of Teal*, 135 S.W.3d 87 (Tex. App.—Corpus Christi 2002, no pet.), as the primary basis for determining that the co-testatrix here could qualify as a witness to her husband's will. Although the majority ably and accurately sets out the facts in *Teal*, some are repeated here. Teal, the testator, had drafted his own two-page will and had requested Anzaldua to act as the notary. On the back of the second page were two signatures, with the word "witness" hand-printed beneath each; one of the signatures was illegible and the other purported to be a "Jane Martinez." Anzaldua testified that she had questioned Teal about the content of the will and partially discussed its consequences and that she had first determined that he was signing the will of his own free will; she then saw Teal and the two witnesses sign and then she, herself, signed the will and affixed her notary seal. Anzaldua specifically maintained that she had intended to sign the will solely "to witness to the signature on the will," not as "a subscribing witness" to the will. After Teal died, neither of the two persons shown on the will as witnesses could be located. Needless to say, the will contained no self-proving clause. The Corpus Christi court ruled that, despite her protestations about her role in the will signing process, Anzaldua

> [s]igned the will in the presence of the testator. Because there is no requirement that a will be notarized, Anzaldua's signature served no purpose other than as a witness. Her actions, in questioning the testator about his intentions and the contents of the

8

will are more consistent with the actions of a witness, than with the actions of a
notary public.

*Teal*, 135 S.W.3d at 91–92.

In *Teal*, if you remove Anzaldua's role as notary and do not consider her a witness, her presence and her signature served no purpose. In our circumstance, however, Dena's presence and her signature had a center role in these proceedings; she was acting as a co-testatrix of the joint will of her husband. There is no evidence that she assumed the role of a witness to anything or that her husband, the decedent, considered her as playing that part; she was a participant to the act and not a witness to it. Her presence was not surplus; it would have been required if she were to be bound to the terms of the will herself. Her presence and her signature served a purpose: co-testatrix.

Suppose that the joint will had been typewritten and not in Dena's handwriting (thereby making it a non-holographic will on her part). Suppose, further, that both of the joint testators had died simultaneously. Given that circumstance, would we now determine that when the joint will is presented in each of their separate probate actions that each could have served as a witness for the other? Unless that answer could be in the affirmative, we must determine that Dena could not simultaneously be both a co-maker of the will and the witness to the will of her co-maker.

I would find that because Dena's role as a co-maker of the joint will disqualified her from also being a witness to her co-maker's signature, the will fails.

Bailey C. Moseley<br>Justice

Date Submitted:     August 19, 2009
Date Decided:     September 29, 2009